PAPANICCOLAO Mr. Papaniccolao was sanctioned in the amount of about $410,000 for disgorgement of profits and for attorney's fees and costs. We're here before you today asking that you reverse based on three basic errors. First of all, he should not have been held in contempt in the first place. I think it was an abuse of discretion to do so, both for legal reasons and for factual reasons where the facts were undisputed. Secondly, we think the sanction orders on the disgorgement of profit and the requirement for payment of attorney's fees also were an abuse of discretion based upon the undisputed evidence before the Court at the time. And thirdly, and this is the issue I'd like to start with, we believe that the Court abused its discretion in denying the motion to vacate or amend. Now, that motion was brought both under Rule 59e as a motion to amend, and it was brought under Rule 60b-4 as a motion to vacate on voidness grounds due to a lack of due process. The standard for review on the 60b foreground, of course, is a de novo review. And that's what I'd like to start with. And, of course, the parties agree upon that standard of review, and that's set forth in the briefs. There are certain critical undisputed facts which we've reviewed in the briefs, but what I'd like to start out by highlighting, everything that the district court judge did in this case up until the time that the sanctions were awarded were based upon a briefing schedule. When the motion for an OSC rate contempt was filed, he canceled the hearing and set a briefing schedule. When he issued his OSC rate contempt, he issued a briefing schedule to respond to it. Once he found my client in contempt, he issued a briefing schedule to address the issue of an accounting of profitability. Fourthly, when Jerry's Famous Deli filed a supplemental motion for attorney's fees, the judge vacated the hearing and set a briefing schedule. And finally, when the parties – when the judge found that the accounting had not been done through an audited financial statement, which he hadn't required to begin with, he set a deadline for the parties to agree on a briefing schedule. Alito Is there a requirement that there be a hearing? Absolutely not. In the Ninth Circuit, it's clear there doesn't have to be a hearing, but there does have to be an opportunity to respond. And up until the point that the sanction orders were issued, deadlines had been set on five different occasions to respond by. And, of course, the parties were aware if they didn't respond by a deadline, like any litigator knows, you risk the opportunity of default. When the auditor's report is submitted, however, on May 2, 2002, there's no motion that's filed asking for a disgorgement of profits to be entered in accordance with the – with the auditor's report. No motion is set, so there's no triggered deadline to respond to that report. We immediately file papers asking the judge to set a hearing date, set a briefing schedule to address this auditor's report. Here are some examples of how it's wrong. A few months pass. Jerry files another ex parte application asking the court to please decide the issue. Again, now that we've assembled some evidence, we tell the district court we're about to present that evidence. Let me just step back a little bit, because here's the difficulty I'm having. Maybe you could address this. Is down the road, you're saying now we're about to assemble some evidence. But after he answers a contempt order, and we have this gross profits, it's the burden is on Mr. Papanicola to come up with any offsets, in effect. And he has that opportunity in a briefing schedule, and he doesn't, you know, he doesn't kind of make the grade, so to speak. So then the judge, instead of entering an order, which he could have done at that point, in effect gives him another chance by going to an independent auditor to figure out what the figures are for deduction. And again, he has an opportunity to go through, and he does respond to most of that. This goes on over, you know, a period of a year. So I keep having trouble thinking that it's a due process violation, given if you step back and look at how it came up and had Mr. Papanicola discharged his burden in the first place, you wouldn't have been in a situation which you found yourself. You're focusing on two time periods which are important. One is before the auditor's report was ever issued, when you go back to the order rate contempt in January of 2001, and then you look at what happens after the report is issued. Let's start with the first period. When the order rate contempt is issued in January, January 22, 2001, Mr. Papanicola has 28 days to provide an accounting to the court of his profits. So he gets together his compilations with his CPA. He submits declarations as to the veracity of those compilations, both from the CPA, who, of course, had assembled the information from Mr. Papanicola. That's the nature of a compilation. And Mr. Papanicola submits declarations saying everything I provided to my CPA was accurate. Okay. So he lays the foundation. The district court did not require him to submit audited financial statements or any backup material. Juries complained that they weren't audited and they want more of the testing. And they pointed out issues that they thought might have discrepancies. And the court agreed and ordered an audited financial statement. Now, at that point, Your Honor is right. We had an opportunity to present the financial information, but we had no knowledge that in that short a period of time the judge expected us to have audited financial statements prepared for a 4-year period in 28 days. That would have been impossible to do. Even when the auditor was appointed, it was agreed that certified financial statements couldn't be prepared for a single location restaurant that was a sole proprietorship. The tests and procedures and backups that are involved in a certified financial statement weren't present in a sole proprietorship like this as they would be with a company that publicly reports its financial information. So it was agreed with you. I understand. But I think it was the reason you ended up with having to have an audit of financials was because of the sorry state of what was presented to the court the first time. Sorry state, Your Honor, is I guess from the viewer's perspective. It was accurate information. And when the auditor looked at it, he made a number of false assumptions. So before we get there, before we get there, we don't even know it was a sorry state, do we? All we know, based upon the record, is the trial court said, I am rejecting your audit. Excuse me, your figures or your report, because it's unreliable, because it's not audited. That's what he said. Now, I know the other side said, oh, it had this problem and that problem and that problem. That's not what the judge said. What the judge said is I reject it because it's not audited. Right. And then he went out and he ordered an audited one. But can I ask you some specific questions? I want to make sure I get them in before you're out of time. There are two things that I wanted you to address. One is the issue as to whether or not in the profits calculation you should take into account, which is your argument, but I want to pursue it a little bit, the compensation that would have been paid to a person who is running the delicatessen. And that was an argument because I don't know how to pronounce his name, but we'll call him Roxy for these purposes. He ran the delicatessen. He said that he ought to be able to deduct from his profits that amount of money which would have been reasonable for the services that he provided. Is that correct? Correct. Okay. Is there any – what authority do you have for that proposition? Your Honor, it's in my appellate brief and it's not really disputed in the response brief. I don't know it off the top of my head. There is authority in the appellate brief for that. Okay. And that was one of the adjustments that was ignored in issuing the… Right. And your argument is that you supplied the district court with different ways to calculate that amount based upon declarations of what the comparable amount would be. Yes. From early on, we did argue that both the tax burden should be taken into account. I'll leave the tax burden out for a minute. And the compensation. Okay. So the question is why wouldn't you include compensation for services that were rendered in reducing what the profits were? And I guess the answer – what was suggested, I guess, is because there's not – the for running a business in which, during the course of the business, he conducts it illegally. He does some things which are inappropriate. And so, therefore, it's improper to give him any compensation, I guess. That's exactly the way I think Jerry would pose the answer. And our response to that is if he hadn't worked 60 hours a week as the general manager, president, and CFO, somebody would have had to have done that. Yeah, but I understood – maybe I misunderstood the argument the first time around. I thought the first argument was there can't be any profits because after you take the profit less kind of tangible overhead, any additional margin is, per se, his compensation. Wasn't that the argument? I think that's basically right. If I could refine it in just one way. So you're basically saying, well, whatever's left over, that's for him. And that's how he was paid. It was a sole proprietorship. Whatever was left is what he kept. And after you – when you look at it initially, when the Court initially required us to provide financial information, that was one of the arguments we made. When the auditor did his report and we then showed all the errors in it, and we brought the number back down to the correct profit number, we argued you should apply the tax burden, which there's some legal support for, and the remainder only amounts to a compensation of about – I think it's about $28,000 a year. That's after application of the tax burden. Is that after you deduct his child support and all that stuff that's listed? Yeah. That was one of the errors, Your Honor. There's about 11 errors that the auditor made. Okay. So you take the auditor's number of $415,000 and you get it back down to $178,000. You think the auditor should have taken his child support payments out. The child support payments were for employees whose wages had been garnished to pay. Right. They weren't his. Right. And so that was an example where the auditor made an incorrect assumption about whether they should be deducted. And there were about 11 of those categories, which are, by the way, undisputed, that were improperly taken into account in pumping up the profits to an imaginary level. What taxes – let me turn to my second question. What taxes do you feel should have been deducted from the profits? In light of the Supreme Court, in light of this Court's decision in Three Boys Music, what taxes did you argue or do you argue should be deducted? There were self-employment taxes that had to be paid on the income because he was a sole proprietor, and income taxes. And the tax burden was about $58,000. And the concept is, basically, fairness, that you double punish somebody if you increase imaginary profits by ignoring the taxes, which he's already paid, and he did pay them, and then you require him to pay those in profits. He's being double punished. And not that taxation is punishment. It's just that paying imaginary profits that don't exist because the taxes have been paid is not a proper method of punishment. It's not compensatory. It doesn't require him to disgorge something he got. He didn't get it to keep. He paid it to the Federal Government and the State Government. I understand, but it's an expensive – depending on his own income tax bracket and so forth and other considerations that have nothing to do with the – that may have nothing to do with the operation of the business. In other words, it may be a very profitable business, but he's sitting out there having one tax liability or another tax liability or credits and so forth and so on. And therefore, if you apply the credits against the income tax, it would be – it would be – you could deduct – you would get to zero in profits. Depending on his tax situation, that's correct. We just looked at the particular – And that may not be a function of the operation of the business. That's correct. That's correct. If I may, I wanted to go back to Judge McKeon's question about the periods of time. Mr. Papanicola, of course, was not required to submit audited financial statements. He was given a very short period of time during which even the auditor couldn't have done it. It took him two months just to do a review, let alone produce audited financial statements that couldn't have been produced. So he did what he could in the time available, and he couldn't have foreseen the errors, the gross errors that the auditor would have made. When he was faced with those errors, it took him a little while to get his documents back. He got them back on May 31st. And by the beginning of August, he had assembled a huge amount of information to dispute every one of the assumptions. And it was in terms of copies of checks, invoices, very detailed information, about 600 pages of exhibits, six declarations of about 40 pages in length. It was a lot of work. I can see the district court is probably getting tired at this point, right? Probably, I would think. But still, you know, he needed his day in court. And if you look at the cases that deal with the due process issue, they basically say you've got to get notice of what's going on. Well, he knew what was going on, but he didn't have a deadline to respond. There was no notice of the procedure or deadlines that he was expected to follow. And the Memphis Lights case from the Supreme Court stands for that proposition. Alito. Kagan. Would we need to determine this on due process, or do you think if there was even one or two clear errors that it would merit a return to the district court? You can decide this in a number of ways. One way, the contempt order initially, based on the evidence the judge did have in front of him, was erroneous. The legal arguments in terms of compensation. Let's say we accepted that. Yeah. I'm just talking now about the profit calculations and the attorney fee calculations. Okay. On the disgorgement order, the order to begin with, even before the motion to vacate was filed, was improper on its face. There are legal reasons why in terms of the tax burden and the compensation issue. There are factual issues where some evidence had been presented which weren't even discussed. There was a $21,000 math error. There were two miscategorized categories of expenses. Those all added up to $78,000. So, counsel, are you asking us then to reverse those issue by issue as a matter of law, or are you asking us to find in a blanket way that your client was denied due process and, therefore, he should have an opportunity to dispute all this and the district court should take all of this up in the first instance? We could go through it. I think in the first instance, he shouldn't have been held in contempt because he... Okay. But let's suppose we're over that. We're just assuming, and we know you don't agree with this. In the second instance, once the sanction orders were awarded in terms of disgorgement and attorney fees, that was improper because of the factual issues, factual matters where there was no dispute. The Court didn't even... I'm a little con... I don't quite understand that argument, to tell you the truth. I find you... They found your client... The Court found your client in contempt. Okay. Right or wrong? Okay. So, but we... Let's say we accept that. Now, there are a couple of remedies that are available. One is disgorgement of profits. Now, are you saying as a matter of law that was wrong, or are you saying that actually what is wrong is the profit calculations? There were no profits in this case. I know you're saying the latter. But are you... Why don't you go back to the former and explain to me why that is wrong? We don't dispute that profits are properly disgorged if they result from the violations. Okay. So, you say that there was not a logical nexus or a legal or a factual nexus between the improper conduct, which gave rise to the contempt citation, and the profits that were generated therefrom. Correct. And that's undisputed. His revenue went up when he corrected... Okay. I see that argument. And then to answer your question, if we get to the third stage, if you agree that the contempt order, I'm sorry, that the sanction order should be reversed because of factual errors and the Court ignoring undisputed evidence, which wasn't even discussed in the disgorgement order, and then you get to the third level, which is Mr. Papanicola, before the disgorgement order was issued, never had a full chance to present all of his evidence, and he should be able to do all of that. So, the order should also be reversed on grounds of lack of due process, so he's given an opportunity to discuss everything with the district court. And I would go one step further. The motion to vacate or amend says that the Court ignored undisputed evidence in not just vacating the disgorgement and the attorney fee order, but in failing to amend them. Kagan. Let me ask you now, because he issued the order, and then in your post-dollar motions, you then put in additional stuff. Right. Has, in your view, is the record now complete as to the alleged complaints with the calculations? I know you wouldn't agree with how they made them, but is the record complete as to what the offset should or shouldn't be in your view? I think it is. We, at that point, when we filed the motion to vacate or amend, presented all the evidence we had to show that the auditor's report was wrong. And it took us two months to assemble that mass of evidence, and it wasn't easy. From Jerry's point of view, when we filed that motion, they had the opportunity to say, don't grant the motion. You should save some time. I do want to, yes. Why don't you just complete your sentence? To answer that question, Jerry's had the opportunity to say, deny the motion on grounds that the auditor's report was right, declaration could have been obtained. There was really no way to do that. The report was clearly wrong, and the documentary evidence showed that. So from Jerry's point of view, they had the opportunity. I think the record is complete from its side, too. All right. Thank you. Thank you. Oh, well. Good morning, esteemed panel members. I'm Stephen Young of Freeman, Freeman & Smiley, representing Jerry's Famous Deli. I want to make a brief statement and then go into some of the issues. Well, why don't you do this? I don't think you have to spend much time, unless my colleagues wanted to address, the issue of the legitimacy of the contempt finding. All right? Let's put that aside just for the moment. Why don't we get to what seems to be troubling at least me, which is the rejection of any attempt to take into account the various errors that were cited at various stages of the proceeding by the opposing side with respect to the audit. I would be happy to address that, Justice Breyer. Judge. Don't let him go to his head. In any event, Your Honor, the question has been put to this Court, was there due process in a number of respects, including in focusing on the issue of these issues about the auditor's report? Was there due process? Were these things before the district court? The answer is yes. In the first place, at least the law in this circuit is that there is no requirement that there be a full evidentiary hearing once there's been a determination of contempt. Be that as it may, at times frustratingly so, the district court moved very, very slowly and very deliberately. There was ample opportunity, ample opportunity for the appellant to get before the district court all of the things, all of the alleged errors that they complain of. And, in fact, they were before the district court. The district court may have and certainly did deny the motions to vacate or amend, but all of that evidence was there. Well, it came in May 2nd, the auditor's report comes out, right? Correct. Okay. So not before May 2nd could he point out all the errors of the report. Not before May 2nd. But what's interesting in what he did. May 10th. Yes. He files, doesn't he? A pleading requesting a hearing. And he cites in that pleading a number of errors, doesn't he? Then he does. And he does that. Now, that's eight days from where I come from. He gets that in. Yes. Right? And then nothing happens. And then on July 26th, you say, look, we'd like a ruling on this. Right? Correct. And then on August 1st, he files this very, very lengthy memorandum with declarations and so forth, saying this is a mistake, this is a mistake, this is a mistake, this is a mistake. And he wants a hearing again on all of this. And with great alacrity, the judge would have this matter under for ten months, issues a ruling five days later, overruling all the objections. Now, putting all that aside for a moment, how would we even start to inquire into whether the basis for the rejection of all of the objections was correct or had some basis at all? He doesn't give a single reason, a single reason on the merits of any of their objections. There are no credibility determinations. Nobody comes in and testifies, doesn't look that witness in the face. He doesn't make any determination. He just says, oh, well, I overruled the objections. And then when the final, when they finally come back and say, wait a minute, Judge, at least we were entitled to some hearing under their other rules and so forth and so on. When they seek final relief, the judge says, I already ruled. Your Honor, respectfully, I think the judge really said a little bit more than that. Did he? Okay. And this is your opportunity to show me in the record exactly what the judge said, because I've read the judge's opinions in this case. I don't find it. So you show me in the record what we look at in order to find out the merit of any of these objections that were raised. Your Honor, I cannot point to exactly where he said it, but I recall that there is language where he said that I have read these materials, I've considered them, and I reject them. That's fine. We wouldn't be here if he had come to a different conclusion, at least on that issue. I'm asking you for the reasons, the reasons the judge gave for rejecting it. I can't give you those. Because he didn't, did he? That is correct, Your Honor. He did not. But the question is this. One of the things the counsel makes a big point about is about all these errors and not having a chance to get them before the Court and have the Court consider them. The record is very clear that this extent to which they were brought. No, he's not saying that. He's saying I did bring the errors to the Court's attention. What I didn't get the opportunity was either a hearing or some type of proceeding where the errors that I cite would somehow be evaluated by the trier of fact as to whether or not they had merit. I mean, after all, if an auditor says part of what the auditor is saying in his admitted assumptions in all of this, in the assumptions, he says I don't have the records to support this type of payment, and therefore I reject it. Now, auditors can do that. But what if, in fact, as the defendant claims here, he did have the records? Your Honor, can I respond to that? The record on this case is very, very clear that the auditor had enormous difficulty with the appellant getting any records from them. And that is why there's a problem here. If there's a problem here in terms of completeness of record, it's a problem that the appellant made by not having those records available. It took months and months and months for the auditor to get any records. So you're telling us that in your opinion, in your opinion, when counsel in their declaration said actually the documents upon which you claim aren't there are there, you're saying that's wrong. That's wrong. That's right. And by the way, where in the record do we find that? Where do we find, other than your opinion, where do we find that the documents which, for example, that went for an insurance payment or a lawsuit or this or that or all these mistakes in which he says I didn't have the documents, where do we go, where was the inquiry made as to whether or not the documents existed? Where in the record do we find that? I believe that the report of the auditor discusses the lack of certain records. Yeah. And their claim is he's wrong. They're saying it was right there. So that's why we have like trial judges. That's why we have finders of fact. That's why we have those people out there who are supposed to take conflicting claims and make a finding. That's what judges are all about at the trial level. Your Honor, I do understand that, but I want to point something out. The initial showing that was made to the trial judge, the initial set of claims that were made to the trial judge about this audit cited three specific examples of what the appellant felt were errors. What was available at that time or almost immediately thereafter was the self-same massive set of objections that they later sought to have introduced and considered. There was a delay that was caused. It's an unexplained delay in getting that before the trial judge. And yet, with all that delay, everything was still before this district court. Everything. Let me ask you, let me focus then on the time frame after the auditor's report comes out on May 2nd. And then we have basically just two months. June and July. And then early August. We've got the final record. In that time frame, he says, I need more time. I want a hearing. I can see some of these disputes. But it's clear from his additional motions later that were filed after the judge's report that there were some other concrete objections that he didn't make during the 60 days. Is that right? I'm saying during that period, during the 60 days, he did have the evidence in the record is that that was available. It was known. It just hadn't been presented because of choices that had been made and how and when to present it. Okay. But that's a little bit different question that we would have to look at. My question is this, is that he now says, I've made all my objections. I have everything in the record. And would you agree that some of the objections that he made after the order came out weren't among the objections made during the 60 days? I think in essence, they were either made or they were available, and the record is clear. That's a different question. Don't mix and match. I'm not talking about availability. I'm talking about whether they were actually asserted. I think additional things were added later. But the point is they could have been included at the time. And that raises, now it's the could have question. And that does raise a question of if you don't know when the deadline is, how do you know that you should have basically spent your WAD at that point? And in other words, if you ask for hearing and you ask for more, and then you don't hear from the judge, I could see where a lawyer would say, well, you know, that you wouldn't actually put more evidence in until you heard from the judge as to what's going to happen. You know, I suppose, Judge McKeown, McKeown. McKeown. McKeown, I'm sorry. That it's a question of perhaps litigation tactics. One of the choices is that when you have a massive objections, a number of objections, that you think invalidate the auditor's conclusions, and you have them available, you get that to the court's attention as soon as possible. You don't say, here's three examples, and there's so much more we could tell you about. Well, but they did. I mean, this thing, of course, has drug on since 99. And then. Actually, this case, Your Honor. I realize. 1992. I know, that's the earlier. It was Brown. Yeah. I realize when, you know, we first started disputing movie posters and other things. And when this is all over, I plan to visit both Jerry's and Roxy's, neither of which I've been to at this point. But I'll wait. And eat elsewhere in between. But, you know, it went on for quite a few years, and even this contempt disgorgement went on. But it does seem a little bit lickety split to have 60 days but not know that you have 60. In other words, if the judge said you have 60 days and they didn't get it in, then you might say, okay, I'm sorry. It wasn't an unreasonable period of time. But what I am struggling with is if you really don't know what the deadline is, how do you know when you're supposed to kind of drop your final. I guess, again, you know, the answer to that, and it's a very fair question, is you don't know. But when you don't know and you do have objections, I think you kind of take your chances in terms of how you approach this. If you have three examples, you say you have three examples, and here they are. And we have so much more. And the record is clear that they did have more to say and when they had to say it. But if the judge had just said, look, I'm not having a hearing, you know, you might want a hearing. And I think that actually no, quote, hearing, as we envision it, is necessarily required. But if the judge said, the judge never really ruled on whether there would be such a hearing. And had the judge just said there is no hearing, I'm going to decide this and this is the deadline. It would have been simpler. It would have been easier. Right. And now the question, though, is it sort of fundamentally unfair that you're that the person against whom with pretty substantial contempt, disgorgement, actually doesn't know that there's a deadline? Well, again, I can understand the concern for it. But in the context of the case and having represented to the court that they had the ammunition, which they ultimately did put forth, the issue of why not give everything to the court that you had when you had it. And I think that's just, we'll just have to evaluate whether the lack of a deadline, in the light of the context of how the case, you know, started from way back. For our case, our purposes, this starts in 99, although we realize it went way back. But we'll have to decide that if that's a reasonable period. Is 60 days reasonable? From what to what to do what? Well, to prepare all the objections to the audit. Sure it is. Well, that's what they did. Right. The audit came out May 2nd. They filed August 6th. They filed all sorts of objections on August 6th. But they filed earlier. They gave the three examples. We know of much more. Well, they did that in six days. And in between, and in between, the record has that they already had this incredible, detailed narrative, and my hat's off to counsel for having put it together. They had this available. They just didn't drop it in. On the one hand, if you say 60 days is reasonable, as you just said, and they filed their detailed set of objections in 60 days, why isn't that then reasonable? Well, you know, 60 days is a reasonable period of time. That's not to say a shorter period isn't a reasonable period of time. Okay. Let me ask you if, and you may not know the answer to this because it's a pretty detailed question I might have to ask Mr. Papanicola's counsel, but if you took out the attorney's fees, as the judge said, you can't, we can't take those out, so we're going to leave them in, I guess I should say, leave those in, the calculations. What is the swing of what's disputed here dollar-wise? That's massive. If you are correct on attorney's fees. It's massive. It's several hundred thousand dollars. You know, the, this business has been around and was successfully operating between 1992 and the date of the final award, and the idea that it was making some it makes no sense. It just couldn't be that way. And the idea of this gentleman, Mr. Papanicola, saying, well, I should be paid a salary, he's the owner. Everything that's left over after he pays all the other expenses, he has. I understand that, but why isn't, I understand that argument. In other words, if he simply took home a million dollars, and he said, a year, and I get to deduct it from the profits, of course, that's a very good argument. But why, for disallowing it, but why is it wrong then to say, or why is it followed from that, that any amount of money that he, that he wants to claim as compensation must be, must be denied. If, in fact, he spent time, you know, serving tables, or managing the, the employees, or buying produce, or doing any of those things, why wouldn't that be appropriate for compensation? Because he is getting compensated by saving the out-of-pocket cost for someone else to do that, doing it himself, and then being able to take all the profits. He has to disgorge that. Yes. He has to. No, no. I understand that, that if there's something left over, he would have to disgorge it. If he went and hired a manager, and the manager bought the produce, would you claim that that's an improper deduction from profits? Of course not. Okay. So if he did the same thing that the manager did, you claim he can't take it from profits. When he is the sole owner and obtaining all the profits. Is there any law for that? Is there any law? That's a good question. I don't have an answer. I don't know. Okay. I don't know. And that was, was that, was that ever argued to the Court? I mean, in a tax sense, what is the rationale for excluding any reasonable compensation if you're determining profits, for example? I didn't know if there was something derived from the code or elsewhere, or do we not know why the judge did that other than that the auditor did it? I think that's as much as we do know. Okay. All right. Thank you. And I think the auditor was certainly a competent individual that had been approved by the Court. Each side offered suggested auditors, and this was the auditor who the Court felt was the qualified auditor. And I believe, you know, my best belief is that the district judge was simply relying on the auditor's knowledge and qualifications to make the appropriate allocations and determinations and deductions and coming up with the net numbers. Okay. So we don't know that? No, we don't know that. Okay. Thank you. Thank you. Let me ask if you can clarify a little bit, leaving aside taxes, how much of the disputed amount is the so-called compensation, and then how much is other, I won't call them nitpicking because they're not tiny, but other sort of mathematical or, in your view, accounting-type errors? The auditor found a $415,000 profit after making adjustments for the 4-year period, 97 through 2000. Then we presented evidence of $240,000 in error. That got the number back down to, give me the exact number. Three. That brought the number back down to $175,000. $415,000 in change, less $240,000 in undisputed errors, and that brought it back down to approximately $175,000. By the way, in fairness to the other side, when you say they're undisputed, they're undisputed in one sense, is that they never address them. Correct. But they're not undisputed. We don't know whether they're undisputed in the sense that they acknowledge that the auditor made these errors. That's correct. Okay. So we have to put it, I mean, undisputed can mean several things, and we just want to make sure that they will argue, and they would argue, I would assume, look, all right, if you're going to set all this aside, boy, we're going to come in with our auditors, and we're going to show that he was terrific, that he made no mistakes, that he didn't have the documents that you claim he had. They'll take a different position. And they have the opportunity to do that. Right. So your $175,000, what portion of that do you attribute to the compensation issue approximately? There's one more subtraction you have to make. There was $21,598, which was a math error. Right. We've heard more than we care about the math. Okay. So if you subtract that out, you get to $153,320 in profit, and that's before deducting the tax burden of $58,500. Okay. So if you ignore the tax burden, we're talking about 100. Just under 100? Without the tax burden, yes, it's just under 100. Okay. And that's for a 4-year period, his after-tax compensation. Right. Okay. I just was trying to get a sense of the ---- No, he took out the tax. Well, don't take out the tax. No, he did. So that's why what's disputed is 100 or approximately 100. $153,000 divided by 4 is the $38,000. Whether it's 25 or 38 per year, you couldn't ---- Okay. We're just trying to get a sense of the magnitude of that. So I think we've expired our time, unless my colleagues have more questions. Taking the logic of your argument, however, you might be that he owes you money. I wouldn't go that far, Your Honor. Okay. All right. Thank you very much.  The case of Jerry's Famous Deli v. Papa Nicola is submitted. I thank both counsel for arguments. They're very helpful. And we are adjourned for this morning. Thank you.
judges: McKeown, Bybee, Breyer